Our next case is United States v. Scott. Mr. Wise, good to have you here, sir. Good to be here. My name is Ralph Wise. I represent Eric Scott in this matter. This case started out as a relatively simple drug conspiracy case spanning the period of time from 2008 to 2015. And granted, during part of that time, my client was in prison. That would create some logistical problems in a trial. But still, it was a relatively simple case. No double jeopardy problems. No real withdrawal problems. It focused on the conduct of Mr. Scott after he got out of prison. The government, however, elected to supersede the indictment and go back to 2003. Now, when did that happen? That happened, I believe, a couple of months into this case. All right. This was in February of the original indictment, I think it was. So they expanded the indictment on you. They expanded the indictment on me. Went back five more years. Went back five more years. And with that, they created the double jeopardy problem. They created the new statute of limitations problem. And for what gain? The government gained nothing for all practical purposes by expanding this indictment. There were two witnesses that perhaps, somewhat minor participants, that they picked up by going back that far. But that was it. There were no new documents introduced, no wiretaps, anything like that. It only made the guilty plea of Mr. Scott in 2007 significant. The prosecution under the superseding. Now, what did he plead to in 2007? He pled to conspiracy to distribute more than five kilograms of cocaine. That was what he was indicted for. He was actually indicted. I made a mistake in my brief. He was actually also indicted for a crack cocaine charge in that indictment also. But he pled to the conspiracy to distribute more than five kilograms of cocaine. Powder cocaine. Yes. That's correct. The prosecution of this case with the new superseding indictment clearly violates double jeopardy. There is a complete overlap of time with the 2006 indictment. The teachings of Short, Reagans, Jarvis, and Jones tell us the government can't do this. The government cannot use the indictment to manipulate around double jeopardy. What did they claim that the, what kind of drugs were involved in this case? They claimed in the second case, the 2015 or 16 indictment, they claimed there was powder cocaine, more than five kilograms of cocaine, crack cocaine and marijuana. The jury, however, resolved the crack cocaine and the marijuana issue in favor of Mr. Scott. And what is interesting about that fact is all of the testimony involving the crack cocaine, all of the testimony involving marijuana were alleged to have occurred after Mr. Scott was released from prison. And the jury found him not guilty on that. But the government simply cannot go back and, through artful wording of the indictment, through manipulation of co-defendants, manipulation of overt acts, go back and get around double jeopardy. And that's what they've attempted to do here. The government has the benefit of a conspiracy, and there's a tremendous benefit to the government in doing a conspiracy. Hearsay testimony is admitted that otherwise would not be. They actually do not need to show actual drugs. They can have people come in and testify we had drugs over this period of time and that. The evidence rules are somewhat looser with the conspiracy as to who can come in, since you indict people for known and unknown. They had a conspiracy before. They had a conspiracy before, yes. So the superseding indictment didn't change that. Well, it just changed the dates. It just changed the dates. But it still was a conspiracy. It's still a conspiracy. Well, that doesn't expand the application of any rules or anything. No, it doesn't expand that. What I'm saying is by going with a conspiracy instead of an individual drug sale, the rules are expanded in favor of the government. But the government also has a burden when they ---- Well, apparently the fixer-guts could apply those rules in any event regardless of what the charge was. Well, you're not going to have quite the hearsay problems with a straight drug sale case that you have with conspiracy. You get a whole lot more hearsay in with a conspiracy than a straight drug sale case. In a straight drug sale case where they say you sold this amount of drugs, you've got to do the chain of custody and all that stuff that makes it a little more complicated. What was this trial, out of Anderson? The case is out of Anderson. It was actually tried in Greenville. But anyway, but there's a burden on the government with the conspiracy also. And that's the fact that when they do an overlapping indictment, they walk into the face of a double jeopardy problem. For what gain? None in this particular case. Let's look at an example of what can happen with these overlapping conspiracies. Suppose you have a typical wheel conspiracy or what's called a rimless wheel conspiracy where you have 12 individuals that the government knows are involved in this conspiracy. And they do an indictment and name six of them as a co-conspirator. If you get an acquittal in that case, the government can't come back and say, well, we only used six of them, so we're going to indict them again and use six new people, and therefore we don't think that violates double jeopardy. It clearly does. And the same rule would apply if the government only knew of six of the 12 people because the spokes on this wheel, six of them will be known and unknown to the grand jury, which is in virtually every conspiracy indictment. So even if the government — Well, he could have been involved in two different conspiracies, couldn't he? Could be involved in two different conspiracies. But the burden, I think, is on the government to prove it's two different conspiracies, and they haven't done it in this case. They hadn't done it. So if they didn't know the name of the other six and then after the acquittal or conviction, because they didn't like the sentence, they couldn't come back and say, well, we found six more people that you sold to or that bought from you and they're part of this wheel of conspiracy and we're going to reindict you. It doesn't work that way. That's what Jones says. That's what Jarvis says. That's what Short says. It clearly says that. So in this particular case, when the government elects to bring the conspiracy charge, it basically includes through the indictment everybody that they can think of because they're indicted for known and unknown. And in this particular case, and this is what I think really is important about why it does violate double jeopardy, in 2006, if Mr. Scott had elected to go to trial and they knew of the existence of Mr. Bellow, Mr. Bellow obviously would have been a witness available to the government in that case to testify about his dealings with Mr. Scott. The two individuals, Mr. Lee and I believe Mr. Maddox, they testified in the 2015 indictment trial that they bought drugs from Mr. Scott. That's the only trial, right? That's the only trial. The first one was the plea. Did you represent this fellow at the plea? Not at the plea, no, sir. You weren't in the first case. I was not in the first case. I was just in the second. Mr. Wise, this issue was presented to the district court preliminarily, was it not? Yes, it was. The district court determined that Scott had not made a non-frivolous showing that the two conspiracies were the same for double jeopardy purposes. That's correct. You could have appealed that decision, could you not? We could have appealed that decision, that's correct. Would it not have been a cleaner, would it not have been presented to us more cleanly had you done so? Yes and no. Stay with the yes part first and then you can tell me the no part. Well, it would have been the fact that we wouldn't have had as many facts. Whether that's cleaner is another question. Well, it would have resolved that. It would have resolved a big piece of what we're having to wrestle with now. I don't think so, and here's why.  You're right, but you would not have had the facts developed as fully had we appealed initially. How so? Well, because we wouldn't have a trial. We wouldn't have the testimony from Mr. Scott. We wouldn't have the testimony from Mr. Bellow and all this. We would not have had those fully developed facts. The second point is the more practical point. The allegations in the 2015 indictment did include a marijuana charge that wasn't in the 2006 indictment. That was going to trial anyway. I'm still not clear why that information could only have been developed at trial, and the district court did rule against you on this issue twice. I didn't catch that last part. I'm sorry. The district court did rule against you on this issue more than once, as I recall. That's correct, both pre-trial and post-trial. Did you know you had a pre-trial ruling? Did you know you had an appealable order on your hands? I did, but like I say, we had a charge that we were going to have to go to trial on anyway. You made a tactical decision not to appeal. Correct. Okay. And I think as a practical matter, I think the way the facts developed out, I think it is a fuller record for this court to look at as to whether or not there's one or two conspiracies. But one of the protections against double jeopardy is you don't have to go to trial. That's true. That's the reason it's an appealable order at that stage, is if it's really a double jeopardy problem, your client didn't have to be tried. That's correct. But it was going to have to be tried on the marijuana charge anyway, because that would not have been involved in the double jeopardy analysis. So there was going to be a trial. Was it the same indictment? Same indictment. The 2015 conspiracy charge? That's the conspiracy charge. And the 2015 indictment included the marijuana, the crack cocaine, and the cocaine. Isn't that one of the distinguishing factors of the two conspiracies? That's a distinguishing factor, but it doesn't mean that it wasn't double jeopardy. Michael, I was only asking, it really actually wasn't a trick question. It was just, isn't it one of the distinctions between the two? That is what the court relied on, but I don't think it's. It was one of the things the court relied on. Correct. I don't think it really, as a practical matter, matters, because if it's double jeopardy, it's the cocaine, you just try the marijuana. And that eliminates it. But as I say, the testimony of many of the individuals would have been admissible in both trials. And when the testimony is admissible in both trials, it's clearly one conspiracy. At the post-trial hearing in this case, the. . . What kind of a post-trial hearing? We have an evidentiary hearing? We didn't have an evidentiary, and we just relied upon the record. You just came in and argued about what happened at the trial. Correct. Most of the things that your client did wrong occurred before the 2006 case, and what did he do after that? The jury says he did nothing, because they exonerated him for the three charges they had against him for conduct after he was released from prison.  Excuse me? You say they. . . The three things they had against Mr. Scott that related to activities after he was released from prison, they found him not guilty on. So that would be an explanation as to why they went back to 2002. Well, I don't know. Maybe they recognized that a weak case. Well, it could be. The point is this. Mr. Scott went to prison. He got out. His testimony was when he was in prison, he vowed never to get back in it again. All he has ever asked for in this case is for a jury to fairly determine whether or not he engaged in any illegal conduct once he was released from prison. The original indictment focused on that issue. When the government in this case in their closing argument told the jury that they can rely upon what Mr. Scott testified to to convict him, and when all he testified to was, I pled guilty to trafficking or conspiracy to traffic cocaine more than five kilograms, because that's what I was guilty of. Did they put that in evidence in this trial? Well, in a sense, we put it in evidence because Mr. Scott testified. And then the government in that closing argument said, in essence, you don't need to go any further than listen to what Mr. Scott said, because he admitted he dealt in more than five kilograms of cocaine, and that's sufficient to find him guilty. And the jury did. And when the government's able to use the crime that my client pled guilty to and admitted he pled guilty to as a basis for conviction, then that certainly violates the core principle of the double jeopardy. Now, we've got several other issues involved in this case, and I would submit to those on my brief. I see here that he was acquitted of lying to a federal agent. That's correct. In Count 4. That's correct. He was found guilty on Count 1, Count 65, and Count 8. He was found not guilty of something else? He was found not guilty of the marijuana conspiracy and the crack cocaine conspiracy. Well, he was found guilty of the conspiracy, but they said it only dealt with cocaine. Right. But it wasn't found not guilty. That would be more accurate. That's correct. It is kind of accurate. They didn't say not guilty. They said guilty, but they specified that it was a result of his handling or participation in dealing in cocaine. That's correct. Which you say, but they specified that it didn't involve cocaine-based or marijuana. That's correct. All right. And that's the basis. I thought you said something. I thought there was something not guilty. Oh, I'm sorry. I didn't know about it. Okay. I just looked at it that way. All right. Thank you. Mr. Mormon. May it please the Court, Andy Mormon for the United States. I'd like to start with answering Judge Floyd's question, Your Honor, about what did Mr. Scott do after 2006? And then I'll talk about the evidence as it relates to what happened in the conspiracy prior to him going to prison. In the government's brief, the government describes seven witnesses who testified that Mr. Scott reengaged in this conspiracy or actually never left the conspiracy, continued to participate in the conspiracy when he got out of prison in 2011. The government itemized it. 2011 is when he got out. That's correct, Your Honor. He was in prison, what, 06-11? The testimony was from March of 07 to April of 2011. Witnesses Lonnie Maddox testified, Joel Bellow testified, Joselito Olmo testified, Joel Bellow's brother testified. All these cooperating witnesses testified that they delivered cocaine to Mr. Scott after his release from prison in 2011. These witnesses also, many of these witnesses testified that Mr. Scott supplied them with kilograms of cocaine after he was released from prison. Why not just start there? That's a perfectly good case. And the thing that's given me heartburn is that you go back to 2002 and really most of his misconduct occurred between 2002 and 2006. Why gum up a good case? And, Your Honor, I would respectfully disagree with the characterization. The conspiracy language starting the date in 2003 tracked with Joel Bellow's testimony that he began to provide Mr. Eric Scott with cocaine in 2003. And going to the double jeopardy analysis, so we have – Did he plead guilty to that in 07? He did not. He did not. But you're saying it was a separate conspiracy. Absolutely. It was absolutely a separate conspiracy. Yes, Your Honor. And both conspiracies dealt solely with cocaine? No, Your Honor. Both in the 2006 indictment, they alleged cocaine and crack cocaine. In this case, in the indictment, the government alleged cocaine, crack cocaine, and marijuana. He pled guilty to the powder cocaine? In 2006, yes, Your Honor. And he was found guilty of powder cocaine? In a separate conspiracy, yes, Your Honor, in 2006. Well, you say it was a separate conspiracy, but there was never anything guilty on crack or never anything guilty on marijuana. And, Your Honor, I – Isn't that correct? That's correct. Okay. But I would disagree with Mr. Wise's – So the stuff about crack and marijuana is irrelevant here. He's been – that has been put aside because the jury testified otherwise and he didn't plead to it. Well, I think arguably it's relevant as it relates to the five factors from Matkins and the statutes that were charged. But I would – But the findings of fact went against you. I've got the verdict form here. I mean, the jury said no. Your Honor, I would argue – No marijuana, no cocaine base on page two of the verdict form. Yes, Your Honor. But I would argue that to Mr. Wise expressed – He had it in the indictment, but the verdict said – the verdict was rejected. And, Your Honor, yes, absolutely correct. But I think to assume that – The plea didn't cover it. I'm sorry, Your Honor? The plea didn't reach either cocaine base or marijuana. The plea in 07. That's correct, Your Honor. But I would argue that to infer from the verdict that the jury somehow did not find that this defendant, Mr. Scott, continued to engage in the conspiracy after he was released from prison is speculation. I would also point, Your Honors, to the evidence in the record related to what the Spartanburg conspiracy was about. Because the evidence in the record comes from the pretrial hearing we had with Judge Cain on this issue. In that pretrial hearing, Mr. Wise relied – Was there evidence taken at that hearing? There was not. There was no testimony as it relates to this issue. Mr. Wise relied exclusively on the comparison of the indictments in this case versus the case in 2006. Well, in the 2006, is Mr. Bellow one of your known or unknown co-conspirators? He is not. He is not. Bellow is not? I'm sorry? Did you say Bellow was not? That's correct. For the purposes of the 2006 indictment, he was not. He was not known or unknown. That's right. How do you know he's not unknown? You alleged known and unknown. And, Your Honor, the reason why I say that is in the cases of Jones and Jarvis, the cases that Mr. Wise points to, when the court references the language known and unknown, as I read them, based on the facts of those cases, it is probable or likely to infer that those individuals, known or unknown, included defendants in other cases based on the facts. Again, in the facts related to the Spartanburg conspiracy in this case, those facts come from the preliminary hearing that we had on this motion with Judge Cain. In that hearing, the judge referred to excerpts from the offense conduct in the pre-sentence report for the 2006 conspiracy. The judge talked about how Spartanburg was the hub for that conspiracy. I think it's very significant that, and I did this last night, did a search of the word Spartanburg in the joint appendix. That word comes up in the trial on two occasions. One of which is when cooperating witnesses testify that they are currently being housed in the Spartanburg County Detention Center. The other is one reference made by Walter Lee, where he refers to one of his underlings, a co-defendant, Sergio Smith, when he was out of Spartanburg. I would argue there is simply very little evidence that this case, which dealt with Joel Bellow being the source of supply out of Atlanta, Georgia, going to Anderson, South Carolina, supplying Mr. Scott and various other co-defendants with cocaine and marijuana, there is little, if any, evidence to suggest that the Spartanburg conspiracy and this case are the same. I would also mention this. What is the standard for double jeopardy? You say little or any. What if there was a little? Does that taint it? We're talking about the Constitution of the United States. Your Honor, and I am trying to be… You'd already been convicted of it once in 2007. You can't convict him of it again. That's a double jeopardy. Assuming those were the same conspiracies. Assuming that. Right. If it's the same conspiracy… Mr. Bellow is the supplier. He's in Atlanta, Georgia. You mean they can't drive 40 minutes from Anderson to Spartanburg? Or that was the pipeline all the time? Your Honor, that's the evidence. That's the evidence. No, Mr. Bellow is a supplier from Atlanta. So it just doesn't necessarily stop in Anderson to make its way to Spartanburg. I'm not aware of any evidence in this record that shows that Mr. Bellow ever went to Spartanburg to supply cocaine. I would also mention this, that if you look at the cases that Mr. Wise cites, the Jarvis case, if you look at the Jones case, those cases told the story of those conspiracies, and those conspiracies were dependent on the facts of each other. In the Jarvis case, we had conspiratorial activity in Florida ending in Virginia. In the Jones case, we had, as I read Judge Thacker's opinion, we had the ultimate goal of both conspiracies was to sell drugs in Lynchburg, Virginia. In this case, in this record, there is, and again, I don't believe there's any evidence, but I'm trying to be out of abundance of caution, fair to Mr. Wise, very little, if any, evidence that the conspiracy charged in this case related to or was the same as the conspiracy in 2006. And there's just not the evidence to show that. I would also point, Your Honor. What if there was a little? That's not enough. You said there's little if any. What if there was a little? Not enough. And I would point to the… Was there harmless error? I think there is, and the government argues that because of the overwhelming evidence in the testimony. Harmless error can apply to a constitutional violation of the Double Jeopardy Clause. Yes, Your Honor. That is the government's position. Have you got a case to that effect? Your Honor, I have a… I mean, you could have tried this thing on that first indictment and kept it clean. Well, but this is… That's… But here's, all right, and here's what happens. Let's say the government, let's say the government… And if we ruled against you here, if we were to rule against you, maybe you could argue you're entitled to try him again anyway on what would be, in effect, the original indictment. Yes, Your Honor. What he did after he got out of prison. But this is what Justice Rehnquist talked about in the Garrett case, where the Double Jeopardy Clause can't be used to force the government into somehow parsing out offenses that are separate. In other words, it can't be used as a tool by defense to force the government into arbitrarily or artificially selecting one route or the other. If the government had gone forward on a 2008… It could be used to keep you from trying to go out on the same facts twice. And nobody… That's correct, Your Honor, but again, the government's position is the record doesn't support that. The defendant, though, only needs to make a non-frivolous showing to shift the burden to the government to establish, as I understand it, by a preponderance of the evidence that the conspiracies are intact. And I'm still – I think everyone is struggling with what was the gain here. Do a risk – do a cost-benefit analysis. This has created a very significant problem for what? And the gain is this, Your Honor, is that had we not put the start date at 2003, the scope of relevance as it relates to the conspiratorial agreement arguably would have been limited to beginning at 2008. And the evidence generated during the… He was in the penitentiary in 2008. That's correct, Your Honor. So you would have said that – or did say in that first indictment that he was involved in a drug conspiracy while he was in prison. That's correct, Your Honor. So you went back to 2003, and at the time you knew he had already pled guilty to a drug conspiracy involving 2003 through 2006. No, Your Honor, actually… Didn't you know that? I knew he pled guilty to 2006, but the indictment to which he pled guilty, the date ranges in that indictment October of 2005 to February of 2006. Well, let me ask you this. Neither of the indictments in this case allege any overt acts, and you don't have to. But aren't we incentivizing the government to draft vague indictments so they don't overlap? Your Honor, I would disagree with that because, again, the purpose of the 2003 start date was to be able to tell the story that Mr. Bellow told as to when he began to first supply Mr. Scott with cocaine. Had the government used the 2008 start date, you bet Mr. Wise would have objected to any evidence related to drug sales that Mr. Scott engaged in prior to 2008. But the dates aren't elements anyway. They're just for notice purposes. You could put in evidence of a background regardless of what date you put into the indictment, I would think. Well, and Your Honor… What you're trying to do is prove a conspiracy. The danger is that if you try him twice for the same thing, and that's what you can't do, or not try him, try him again for what he pled guilty to. Because when he pled guilty and went to the penitentiary and did five years, he paid the price for that crime that he pled guilty to. Yes, Your Honor. And he's being protected by the Constitution from being tried again for what he already served five years in the penitentiary for. I totally agree, Your Honor, and if the government was trying… Even if he was, I guess you say he was a drug dealer while he was in the penitentiary. That's correct, Your Honor. The Bureau of Prisons is slipping up somewhere, I guess. And if Your Honor… Maybe there's other people to look at. I don't know what's going on. And if the evidence supported the fact that both were the same crime, then you would be absolutely correct. But let's assume that the evidence supports the fact that both conspiracies are the same, which, again, the government does not agree with and does not believe the evidence shows. The government cites the Asher case. And in that case, the… Asher? Asher, A-S-H-E-R. The Asher case, in that case, that involved a conspiracy to steal cars. In the Asher case, Mr. Asher went to prison for participating in the conspiracy, was released from prison, rejoined the conspiracy upon his release from prison, and sought to have the case dismissed based on double jeopardy, arguing that he had been convicted previously for the same conspiracy. And I believe both parties in that case agreed it was the same conspiracy. But still, the court in that case said double jeopardy does not bar a subsequent prosecution because the evidence was that Mr. Asher rejoined the conspiracy after he got out of prison. And it could be prosecuted for rejoining and then doing what he did after he got out of penitentiary. And that would be the same thing here. That would be true. You could have prosecuted him for what he did after he pled guilty and after he was convicted in 2007. There's no question about that. If he committed another crime after that, he's liable for it. And, Your Honor, the government does not believe that there's a prohibition in the government trying this defendant in it for a drug conspiracy that was separate that occurred with the overlap. And I would even cite the McDougall case. In that case, you had three separate organizations involved in working together, but this court held in the McDougall case, even though you had overlap, even though you had common actors, even though you had similar drugs, the conspiracies were different for the purpose of double jeopardy. So I would just submit that on the basis of the record, there's little, if any, evidence to suggest that the conspiracies were the same. It's just not there. And even if the court should find it. Wise said you argued that he could be convicted based upon what he said about what he had done for him. In the earlier case. That's exactly right. I argued that if he. Well, that's asking the jury to convict him for what he already has been convicted of. And I would disagree, Your Honor, because what he testified to did not encompass the dates in the prior conspiracy. He testified that he began getting drugs from Mr. Bellow in 2003. The last drugs he got from Mr. Bellow in 2005. Again, the conspiratorial dates in the 2006 conspiracy, October of 2005 to February of 2006. So the only date range, the only indictment. Dates aren't elements of the offense. It's the earlier crime. It's cocaine. Powder cocaine. But, Your Honor, the dates form part of the test to determine if double jeopardy. Part of the test. Yes, Your Honor. So it is significant. Part of the test, right. So that is significant. So the only indictment for which Mr. Scott was charged that covered the conspiratorial activity that he engaged in with Mr. Bellow between 2003 and 2005 was in this case. Was there any issue brought up about him having been convicted earlier? Was that used in the trial? So, Your Honor, there was a back and forth between Mr. Scott and the government. Mr. Scott actually wanted to introduce that for the purpose of bolstering the argument that he had been convicted previously. And that was a jury argument that he. He wanted to try the double jeopardy issue. Yes, Your Honor. And the government opposed that. Mr. Wise did a very artful job. And I think ultimately the jury had an understanding of the fact that he had been. So the jury knew all about it? They could have inferred that. Was there any instruction on double jeopardy? There was not. Principles of double jeopardy? No, Your Honor, there was not. In conclusion, what I would just say to the court is that based on the evidence in the record, there is just not the evidence to show that the two conspiracies were the same, that the stories were the same. And for that reason, the government would argue that double jeopardy was not a bar to the prosecution and would stand on its brief on the other issues unless the court has any other questions. Thank you very much. Thank you, Mr. Mormon. Good to have you here. Mr. Wise? Just briefly. You ready to give up? Sir? You're not ready to give up, are you? Not quite, not quite. To answer Justice Duncan's question, yes, the trial judge made a showing of non-frivolous, said I did not make a showing of non-frivolousness. Due to the fact that there were no factual disputes, that we did it strictly on the documents, under the Jones case this court would review that non-frivolous finding de novo. And also point out that in both indictments, the only allegation in the indictment as to territory is the District of South Carolina. It's in the 2006 indictment. It's in the 2015 indictment. Nothing like Spartanburg or Anderson? Nothing about Spartanburg, Anderson, and stuff like that. It's the District of South Carolina, and that is why Mr. Bellow would have been admissible evidence in the 2006 trial, along with Mr. Maddox, Mr. Lee, and probably a bunch of others. I would like to suggest something to the court in dealing with these issues, because as I've read these things, they have not always been easy to figure out. It just seems to me that what should be done in these type cases is this. When an indictment overlaps, such as this one completely, the defense files a motion to dismiss on double jeopardy. There is no finding of non-frivolous showing, because once it overlaps, it overlaps. At that point, the government has the burden of establishing legally significant difference between the two indictments, because it should. The government is the one that elected to draw the indictments. The government is the one that elected to put the places, the people, the defendants, and so forth. And thirdly, advise the bar that at such a hearing, the defendant can testify, subject to the protections of Simmons v. United States, similar to what we do in a case involving an illegal search and seizure. If we were to do that, I think these cases would be easier to handle. The government would also, before it indicts, when it knows that this is going to be an overlapping indictment, and we're going to face this problem, because the court has said you're going to face this problem, they will think twice about overlapping indictment. And if they do an overlapping indictment, they will be able to come to court with a clear, articulate reason as to why they're different, and will know something more than basically what I'll say they've done here is, I'm from the government, trust me, they're different. They were the same indictment covering the same district of South Carolina, and the testimony in one would be admissible in the other one, and that clearly violates. They said they had different dates. Dates? They did have different dates. They did have different dates, but they completely overlapped. They also said that he tracked the testimony of Mr. Bellow, and that that was going to be their principal source of information. The Senate, I missed the first part. I'm sorry, that the government tracked, the indictment tracked the testimony of the principal supplier. So what? It doesn't get around the double jeopardy problem. Also, incidentally, Mr. Bellow was one of the chief. It might if Mr. Bellow weren't involved in the, if this were a conspiracy delimited in some way by Mr. Bellow's involvement. Mr. Bellow was involved. I mean, period. I mean, there's no question about that. I don't think the government even does. They talk about Mr. Bellow was not even an unknown. Well, he was an unknown because that came out at the trial. The only source of cocaine Mr. Scott ever had was from Mr. Bellow. He was obviously the unknown in the 2006 indictment. There's no question about that. If the government had any proof to the contrary, I feel sure, we would have heard it at the court below. Thank you. Thank you, Mr. Wise. We'll come down to Greek Council and then take a short break. This Honorable Court will take a brief recess.
judges: Robert B. King, Allyson K. Duncan, Henry F. Floyd